IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-138-D

NORTH CAROLINA FISHERIES )
ASSOCIATION, INC., and )
CARTERET COUNTY FISHERMAN'S )
ASSOCIATION, INC., )
 )
              Plaintiffs, )
 )
v. )       **ORDER**
 )
PENNY PRITZKER, Secretary, United )
States Department of Commerce, et al., )
 )
              Defendants. )

On August 5, 2014, North Carolina Fisheries Association, Inc., and Carteret County Fisherman's Association, Inc. (collectively, "plaintiffs"), filed suit alleging violations of the Endangered Species Act, 16 U.S.C. § 1531 et seq. ("ESA") [D.E. 1]. There have been numerous substitutions, additions, and voluntary dismissals of defendants. The remaining defendants are Penny Pritzker, in her official capacity as Secretary of the United States Department of Commerce, Kathryn Sullivan, in her official capacity as Administrator of the National Oceanic and Atmospheric Administration (collectively, "federal defendants"), and Donald R. van der Vaart, in his official capacity as Secretary of the North Carolina Department of Environment and Natural Resources,[1] Louis Daniel, in his official capacity as Executive Director of the North Carolina Division of Marine Fisheries, and Gordon S. Myers, in his official capacity as Executive Director of the North Carolina

---

[1] Defendant van der Vaart, the Secretary of the North Carolina Department of Environment and Natural Resources, has been automatically substituted for former Secretary John E. Skvarla III, who was originally named as a defendant. See Fed. R. Civ. P. 25(d).

Wildlife Resources Commission (collectively, "state defendants"). On September 30, 2014, plaintiffs filed an amended complaint [D.E. 36]. On October 14, 2014, defendant Myers individually moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 39], and the other state defendants answered the amended complaint [D.E. 41]. On October 17, 2014, the federal defendants moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) [D.E. 42]. On November 3, 2014, plaintiffs responded in opposition to defendant Myers's motion to dismiss [D.E. 46]. On November 17, 2014, defendant Myers replied [D.E. 55]. On December 1, 2014, plaintiffs responded in opposition to the federal defendants' motion to dismiss [D.E. 58]. On January 12, 2015, the federal defendants replied [D.E. 66]. On January 13, 2015, the state defendants moved to dismiss the amended complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(c) [D.E. 67]. On February 3, 2015, plaintiffs responded in opposition to the state defendants' motion [D.E. 69]. On February 17, 2015, the state defendants replied [D.E. 70]. As explained below, the court grants the federal defendants' and the state defendants' motions to dismiss, and dismisses defendant Myers's motion as moot.

I.

Plaintiffs are nonprofit corporations dedicated to the "study, promotion, and development of growth and conservation and use of fish, seafood, and other marine resources." Am. Compl. [D.E. 36] ¶¶ 8–9. Members of the North Carolina Fisheries Association ("NCFA") include "commercial fisherman from all coastal counties of North Carolina, seafood dealers, processors, and distributors." Id. ¶ 8. Members of the Carteret County Fisherman's Association ("CCFA") include "commercial fishermen in the Carteret, Onslow, and Pamlico counties of North Carolina." Id. ¶ 9. Members of both entities are "directly affected by the Endangered Species Act and regulations promulgated

2

therefrom regarding threatened and endangered sea turtles." Id. ¶¶ 8–9.[2]

Defendants are officials in various federal and state agencies. Defendant Pritzker is the Secretary of the United States Department of Commerce and "bears ultimate responsibility . . . for implementation and fulfillment of the agencies under her Department," including the National Oceanic and Atmospheric Administration ("NOAA"). Id. ¶ 11. Defendant Sullivan is the Administrator for the NOAA and "has responsibility for implementing and fulfilling the agency's duties under the ESA." Id. ¶ 13. Defendant van der Vaart is the Secretary of the North Carolina Department of Environment and Natural Resources ("NCDENR") and "bears ultimate responsibility for the preservation and protection of North Carolina's natural resources including sea turtles in state waters and the direction of agencies under the control of NCDENR." Id. ¶ 15. Defendant Daniel is the Executive Director of the North Carolina Division of Marine Fisheries and "has responsibility for ensuring sustainable marine and estuarine fisheries and habitats in North Carolina including ensuring compliance with conservation regulations and protection of the state's fisheries resources." Id. ¶ 17. Defendant Myers is the Executive Director of the North Carolina Wildlife Resources Commission and "has overall responsibility to conserve and sustain the state's fish and wildlife resources through research, scientific management, wise use, and public input." Id. ¶ 19.

Plaintiffs allege that the recreational hook and line fishery poses a known threat to sea-turtle conservation, but that defendants "have failed to take action to prevent the illegal take of sea turtles in this fishery and [have] failed to ensure that the fishery is not likely to jeopardize the continued

---

[2] "All species of sea turtles found in U.S. waters are listed as endangered or threatened under the ESA and as such are protected by the take prohibitions set forth in Section 9 of the ESA." Am. Compl. ¶ 27; see U.S. Fish & Wildlife Service, Listed Animals, http://ecos.fws.gov/tess_public/repor ts/ad-hoc-species-report?kingdom=V&kingdom=I&status=E&status=T&status=EmE&status=E mT&status=EXPE&status=EXPN&status=SAE&status=SAT&mapstatus=3&fcrithab=on&fstatu s=on&fspecrule=on&finvpop=on&fgroup=on&header=Listed+Animals (last visited July 22, 2015).

3

existence of federally listed sea turtle species." Id. ¶ 2. Plaintiffs claim that defendants have ignored scientific data acknowledging that recreational fishing results in "significant numbers of illegal takes of protected sea turtles" and have "arbitrarily and capriciously placed virtually the entire burden of sea turtle conservation efforts and regulation on commercial fisheries." Id. ¶ 3. Specifically, plaintiffs allege that "[b]y failing to respond to documented threats to sea turtle recovery and continuing to authorize, approve, and license recreational hook and line fishery without observation, oversight, documentation, or regulation of sea turtle takes, Defendants continue to violate the ESA." Id. ¶ 4; see id. ¶ 30. Plaintiffs claim that defendants' failure to regulate the recreational hook and line fishery causes illegal takings of sea turtles to occur and is therefore prohibited by 16 U.S.C. § 1538(g). See id. ¶¶ 50–52.[3]

Plaintiffs seek a declaratory judgment that defendants violated the ESA by causing "the illegal take of endangered Kemp's ridley sea turtles, and the unauthorized take of threatened loggerhead, green, and leatherback sea turtles." Id. 19. In addition, plaintiffs request injunctive relief, including an order requiring the defendants "to apply the take prohibitions of Section 9 and implement regulations" against the recreational hook and line fishery "unless and until the fishery has received an incidental take permit," an order requiring the NOAA and the U.S. Fish and Wildlife Service "to conduct in-water abundance surveys and nesting population surveys for the northwestern Atlantic population segment of the loggerhead sea turtle, the green sea turtle, and the leatherback sea turtle, in order to assess the status of the species as required by 16 U.S.C. § 1533(b)," and an order

---

[3] Plaintiffs concede that "despite Defendants failure to comply with the ESA, all sea turtle species within the Northwest Atlantic Distinct Population Segment have continued to experience significant population increases." Am. Compl. ¶¶ 54, 60. Plaintiffs contend that "an immediate stock assessment should be required to evaluate the stock of the loggerhead, green, and leatherback sea turtles and whether or not they have attained delisting and/or downlisting status pursuant to 16 U.S.C. § 1533." Id. ¶ 60.

4

enjoining defendants "from allowing the ongoing operation of the recreational hook and line fishery until such time as an incidental take permit is issued." Id.

II.

Both the federal and state defendants have moved to dismiss the amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See [D.E. 42, 67]; Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005).

"There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

Id. (footnote omitted); see Kerns v. United States, 585 F.3d 187, 192–93 (4th Cir. 2009). Thus, in a facial challenge, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction," a court "must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged" in the complaint and any attached materials. Kerns, 585 F.3d at 193; see Fed. R. Civ. P. 10(c). In factual challenges, however, "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction," the court "may go

5

beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Kerns, 585 F.3d at 193; see Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In resolving factual challenges, the plaintiff has the burden of proving subject-matter jurisdiction, and the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact [concerning jurisdiction] exists." Richmond, 945 F.2d at 768. In resolving a factual challenge, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, 945 F.2d at 768; Adams, 697 F.2d at 1219.

Defendants contend that this court lacks subject-matter jurisdiction because plaintiffs lack standing to bring this suit. The parties disagree, however, whether defendants have presented a facial or a factual challenge to subject-matter jurisdiction. Compare Pls.' Mem. Opp'n Fed. Defs.' Mot. Dismiss [D.E. 58] 11, and Pls.' Mem. Opp'n State Defs.' Mot. Dismiss [D.E. 69] 13, with State Defs.' Reply [D.E. 70] 1–4; see also Franklin v. Jackson, No. 8:14-CV-497-DKC, 2015 WL 1186599, at *8 (D. Md. Mar. 3, 2015) (unpublished) ("A challenge to standing may take two forms: a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish standing, or a factual challenge asserting that the jurisdictional allegations of the complaint are not true, or that other facts, outside the corners of the complaint preclude the exercise of subject matter jurisdiction." (quotation omitted)).[4] Because defendants' respective motions attack the sufficiency

---

[4] Given the equivocal language in the federal defendants' memorandum in support of their motion, it is unclear whether the federal defendants present a facial or factual challenge. Although plaintiffs raised the issue in their response to the federal defendants' motion, the federal defendants (oddly) did not directly address the issue in their reply. Because the federal defendants did not rebut

6

of plaintiffs' allegations, rather than the underlying veracity of the pleaded jurisdictional facts, the court agrees with plaintiffs that defendants have presented a facial challenge to subject-matter jurisdiction. See, e.g., State Defs.' Mem. Supp. Mot. Dismiss [D.E. 68] 10 ("The Plaintiffs' claimed 'environmental injury' was not sufficiently pled . . . ."); Fed. Defs.' Mem. Supp. Mot. Dismiss [D.E. 43] 7 ("Plaintiffs have failed to meet their burden to allege facts that demonstrate standing."); Fed. Defs.' Reply [D.E. 66] 2 ("Plaintiffs' alleged economic and environmental harms are not sufficient to support standing."); see also Graves v. OneWest Bank, FSB, No. 8:14-CV-1995-PWG, 2015 WL 2452418, at *4 (D. Md. May 20, 2015) (unpublished); Roy v. Ward Mfg., LLC, No. 8:13-CV-3878-RDB, 2014 WL 4215614, at *1–2 (D. Md. Aug. 22, 2014) (unpublished); Richardson v. Mayor & City Council of Balt., No. 1:13-CV-1924-RDB, 2014 WL 60211, at *1–3 (D. Md. Jan. 7, 2014) (unpublished); Kelly v. Univ. Health Sys., No. 7:11-CV-24-FL, 2011 WL 780597, at *1 (E.D.N.C. Feb. 25, 2011) (unpublished); cf. Franklin, 2015 WL 1186599, at *9.[5] Thus, in determining whether the complaint is "sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and

---

plaintiffs' allegation that the jurisdictional attack was a facial challenge and because the federal defendants focus on the sufficiency of plaintiffs' allegations in their reply, the court concludes that the federal defendants are presenting a facial challenge.

[5] The court rejects the state defendants' belated attempt to couch their attack as a factual challenge. In their reply, the state defendants argue that section I.B of their memorandum in support of their motion to dismiss questioned "not just the sufficiency of the allegations made in the Amended Complaint but the factual basis underlying the Plaintiffs's standing." State Defs.' Reply [D.E. 70] 3. In section I.B, however, the state defendants attack the sufficiency of the plaintiffs' allegations and cited materials, not the underlying veracity of the jurisdictional facts. See, e.g., State Defs.' Mem. Supp. Mot. Dismiss [D.E. 68] 17 ("[T]he documents cited by the Plaintiffs do not establish that recreational hook and line fishing . . . has substantial impacts on the number of sea turtles." (emphasis added)). Although the state defendants contest some of plaintiffs' arguments, the state defendants do not "den[y] or controvert[]" any of the facts pleaded in the complaint. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987) (quotation omitted); see Franklin, 2015 WL 1186599, at *9. Thus, the state defendants have presented a facial challenge. Nonetheless, even taking plaintiffs' allegations as true, plaintiffs have failed to plausibly allege subject-matter jurisdiction.

7

Iqbal/Twombly," the court will assume the truthfulness of the facts alleged and construe the complaint in plaintiffs' favor. Richardson, 2014 WL 60211, at *3; see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013); Kerns, 585 F.3d at 192–93. However, because this is a facial challenge, the court will consider only the amended complaint and its attached materials, and any documents attached to the motion to dismiss that are integral to the complaint and authentic. See David, 704 F.3d at 333; Kerns, 585 F.3d at 192–93; Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Fed. R. Civ. P. 10(c).

Individual and organizational plaintiffs must establish Article III standing. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005). A plaintiff does so by showing: (1) that the plaintiff has "'suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;'" (2) "'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;'" and (3) that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan, 504 U.S. at 560–61). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claims. See, e.g., id. at 560–61; White Tail, 413 F.3d at 459.

"An association has standing to sue on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

8

participation of individual members in the lawsuit." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003); see Friends of the Earth, Inc. v. Gaston Copper Recyling Corp., 204 F.3d 149, 155 (4th Cir. 2000) (en banc).

A.

The court will first consider whether plaintiffs have standing to sue in their own right. The first element of standing requires a plaintiff to "demonstrate an 'injury in fact' that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir. 2008); see Lujan, 504 U.S. at 560. "In other words, the alleged injury must affect the plaintiff in a personal and individual way." Gaston Copper Recycling Corp., 204 F.3d at 156 (quotation omitted).

Plaintiffs allege merely that "NCFA and CCFA and its members have suffered injury to their economic and environmental interests which are uniquely entwined with endangered and threatened sea turtles." Am Compl. ¶ 10. The federal defendants argue that plaintiffs have not adequately alleged any valid injury-in-fact. See Fed. Defs.' Mem. Supp. Mot. Dismiss [D.E. 43] 9–10. The state defendants argue that plaintiffs' environmental injury was not sufficiently pleaded. See State Defs.' Mem. Supp. Mot. Dismiss [D.E. 68] 13–17.

Plaintiffs have not plausibly alleged either an economic or environmental injury sufficient to establishing standing in their own right. Plaintiffs' conclusory allegation that they have suffered economic and environmental harm does not suffice. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand

9

at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013); David, 704 F.3d at 333.[6] Although plaintiffs allege that commercial fisheries are subject to regulations and (presumably) associated economic burdens, see Am. Compl. ¶¶ 3, 38, plaintiffs have not alleged that either NCFA or CCFA, as institutional organizations, has personally suffered economic harm. See S. Walk at Broadlands Homeowner's Ass'n, 713 F.3d at 182.

Likewise, beyond the naked assertion that NCFA and CCFA have suffered injury to their "environmental interests which are uniquely entwined with endangered and threatened sea turtles," plaintiffs, which are associations of commercial fishermen, have not presented any facts supporting the notion that the alleged sea-turtle takings have caused environmental injury to the organizations. While "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, . . . . the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 734–35 (1972); see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); Lujan, 504 U.S. at 562–63. To establish injury, plaintiffs must show more than a mere "special interest" in the subject. See Lujan, 504 U.S. at 563; Sierra Club, 405 U.S. at 739–40.

Plaintiffs fail to allege a special interest in sea turtles, let alone that NCFA and CCFA are being directly "affect[ed] . . . in a personal and individual way" by the sea-turtle takings. Gaston

---

[6] Plaintiffs' attempt to expound on their injuries through briefing does not cure the amended complaint's deficiency. See, e.g., Pls.' Resp. Fed. Defs.' Mot. Dismiss [D.E. 58] 17–20; Pls.' Resp. State Defs.' Mot. Dismiss [D.E. 69] 19–22. "[P]arties cannot amend their complaints through briefing . . . ." S. Walk at Broadlands Homeowner's Ass'n, 713 F.3d at 184. Moreover, because the court agrees with plaintiffs that defendants have presented a facial challenge, the court cannot consider the sworn affidavits and many of the other materials that plaintiffs attached to their briefs because those documents are not integral to the complaint. See, e.g., Trimble Navigation Ltd., 484 F.3d at 705; Phillips, 190 F.3d at 618.

10

Cooper Recycling Corp., 204 F.3d at 156 (quoting Lujan, 504 U.S. at 560 n.1).[7] Plaintiffs have not alleged that they have an "aesthetic" or "recreational" interest in sea turtles or even a "desire to use or observe" sea turtles. Laidlaw, 528 U.S. at 183; Lujan, 504 U.S. at 562–63; Sierra Club, 405 U.S. at 735. Although in "the environmental ligation context, the standing requirements are not onerous," plaintiffs have failed to allege any facts to support the naked assertion that the organizations have personally suffered an environmental injury. See, e.g., Am. Canoe Ass'n, 326 F.3d at 517. Moreover, plaintiffs' admission that, despite defendants' conduct, "all sea turtle species within the Northwest Atlantic Distinct Population Segment have continued to experience significant population increases" dooms their claimed environmental injury. Am. Compl. ¶¶ 54, 60.

Aside from conclusory allegations of injury, plaintiffs have not plausibly alleged that the defendants' conduct injured them either economically or environmentally. Accordingly, plaintiffs have failed to "differentiate [themselves] from the mass of people who may find the conduct . . . objectionable only in an abstract sense." Gaston Copper Recyling Corp., 204 F.3d at 156. Such abstract feelings are not sufficient to support Article III's requirements for a valid injury-in-fact. See, e.g., Laidlaw, 528 U.S. at 184. Thus, plaintiffs have not plausibly alleged that they have standing to sue in their own right.

---

[7]Although plaintiffs claim they have organizational interests in "the study, promotion, and development of growth and conservation and use of fish, seafood, and other marine resources," and that their objectives include assembling and disseminating information with respect to "conservation, preservation and use of products of the sea," see Am. Compl. ¶¶ 8–9, sea turtles are reptiles, not fish. Moreover, sea turtles do not seemingly qualify as seafood or marine resources. Furthermore, although sea turtles apparently mate in the water but hatch on land, the court need not plumb the depths of the question "when does sea turtle life begin?" because even if sea turtles are "products of the sea," plaintiffs' tangential interest in disseminating information concerning sea turtles is not sufficient to support standing in this case.

11

B.

Plaintiffs also cannot establish representational standing. To assert representational standing, plaintiffs must plausibly allege that one or more of their members would meet the required elements of standing, that by bringing the suit the organizations seek to protect interests that are germane to the organizations' purposes, and that the individual participation of members is unnecessary. See, e.g., Warth v. Seldin, 422 U.S. 490, 511 (1975); Am. Canoe Ass'n, 326 F.3d at 517; Gaston Copper Recycling Corp., 204 F.3d at 155.

Plaintiffs have plausibly alleged that their members have suffered economic harms. See Am. Compl. ¶¶ 3, 38. Plaintiffs have not, however, plausibly alleged that their members have suffered an environmental injury. Although plaintiffs have alleged that their members fish and work in North Carolina waters, the Supreme Court has rejected the "ecosystem nexus" approach to environmental injury. Lujan, 504 U.S. at 566. In Lujan, the Court held that "injury-in-fact" does not cover "persons who use portions of an ecosystem not perceptibly affected by the unlawful action in question." Id. Plaintiffs have not alleged that any of their members have an "aesthetic" or "recreational" interest in sea turtles or even a "desire to use or observe" sea turtles. Laidlaw, 528 U.S. at 183; Lujan, 504 U.S. at 562–63; Sierra Club, 405 U.S. at 735. Thus, although plaintiffs have shown that their members use the waters where sea turtles are allegedly being taken, they have not plausibly alleged that their members' use of the waters is being "lessened by the challenged activity." Laidlaw, 520 U.S. at 183; Sierra Club, 405 U.S. at 735. Moreover, any claimed environmental injury due to the sea-turtle takings is not plausible in light of plaintiffs' allegation that sea turtle populations are increasing and plaintiffs' request for a "delisting" or "downlisting" of sea turtles from the endangered species list. See Am. Compl. ¶¶ 54, 60. Thus, plaintiffs have not plausibly alleged that their members have suffered an environmental injury-in-fact, and the court rejects their argument

12

that the takings in and of themselves constitute a valid injury.[8]

Nonetheless, because plaintiffs have plausibly alleged that their members have suffered economic injury, the injury-in-fact element has been met, and the court will consider whether the economic injuries suffered by plaintiffs' members are traceable to the challenged conduct and are likely to be redressed by a favorable decision by this court. As for traceability, the traceability requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." Gaston Copper Recycling Corp., 204 F.3d at 161. Although plaintiffs' alleged economic injuries are the result of regulations imposed by the defendants, they are not fairly traceable to the <u>challenged</u> conduct, namely defendants' alleged failure to regulate the recreational hook and line fishery's sea-turtle takings.

The traceability requirement does not require a "but-for" standard and is "not equivalent to a requirement of tort causation." Nat. Res. Def. Council, Inc. v. Watkins, 954 F.2d 974, 980 & n.7 (4th Cir. 1992) (quotations omitted). Moreover, whether an injury is "fairly traceable" to challenged conduct is also not a question of proximate causation. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391 n.6 (2014). Nevertheless, "fairly traceable" requires some causal connection between the challenged conduct and the injury. It is not enough to merely allege that the defendants caused both the injury and the challenged conduct—there must be a causal link <u>between</u> the two. See Am. Canoe Ass'n, 326 F.3d at 520 (plaintiffs must show that defendants'

---

[8] In light of this conclusion, the court need not consider whether the sea-turtle takings are fairly traceable to defendants' conduct or whether they are likely to be redressed by a favorable decision from this court. Cf. Animal Welfare Inst. v. Martin, 623 F.3d 19, 25–26 (1st Cir. 2010) (considering whether lynx takings were fairly traceable to trapping regulations and redressable by the court after finding that the plaintiffs had adequately alleged an environmental injury in the lynx takings themselves); Loggerhead Turtle v. Cty. Council of Volusia Cty., 148 F.3d 1231, 1247–55 (11th Cir. 1998).

13

conduct "causes or contributes to the kinds of injuries alleged"). Simply put, in this case, "the causal nexus constitutionally required for standing is absent." Am. Canoe Ass'n v. U.S. EPA, 30 F. Supp. 2d 908, 915 (E.D. Va. 1998). Thus, plaintiffs have not established traceability.

In opposition to this conclusion, plaintiffs argue that defendants' conduct contributes to their economic burdens because, if defendants regulated the recreational fishing industry, there would be fewer sea-turtle takings and less need to regulate the commercial fishing industry. See Pls.' Resp. Fed. Defs.' Mot. Dismiss [D.E. 58] 21–22. In making this argument, plaintiffs confuse traceability with redressability. Simply put, the mere fact that agency action could potentially redress or mitigate an alleged injury does not mean that agency inaction is a contributing cause of the injury or that the injury is fairly traceable to the agency. See Tex. Shrimp Ass'n v. Daley, 984 F. Supp. 1023, 1026 (S.D. Tex. 1997).

As for plaintiffs' argument that a favorable decision in this case could redress their members' economic burdens, the argument is entirely speculative. "[T]he redressability prong requires that it be likely, and not merely speculative, that a favorable decision from the court will remedy the plaintiff's injury." Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002); see Gaston Copper Recycling Corp., 204 F.3d at 154. Here, nothing suggests that, if this court required defendants to enforce sea-turtle takings regulations against the recreational hook and line fishery, such regulations would likely result in a lessening of the commercial fishing industry's regulatory burdens and compliance costs. See Tex. Shrimp Ass'n, 984 F. Supp. 1026–27. "It is pure conjecture that any relief sought by Plaintiffs will result in the [defendants] exercising [their] discretion and easing the regulatory burden on Plaintiffs." Id. at 1027. Thus, plaintiffs have not plausibly alleged that their members' economic injuries are likely to be redressed by the requested relief.

14

Because plaintiffs have failed to plausibly allege that either they or their members have standing to sue in their own right, the court does not have constitutional authority to adjudicate this suit. Thus, the court grants the motions to dismiss for lack of subject-matter jurisdiction.[9]

III.

Alternatively, plaintiffs have failed to state a claim upon which relief can be granted against the federal defendants. A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); see Vitol, S.A., 708 F.3d at 543. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. Twombly, 550 U.S. at 555 & n.3; Vitol, S.A., 708 F.3d at 543; Francis, 588 F.3d at 193. "Determining whether a complaint states a plausible claim for relief will . . . be a

---

[9] In light of this conclusion, the court need not address defendant Myers's individual motions to dismiss [D.E. 31, 39] and dismisses them as moot.

15

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Section 9 of the ESA makes it "unlawful for any person subject to the jurisdiction of the United States to . . . take any . . . species within the United States or the territorial sea of the United States" if that species is listed as endangered or threatened. 16 U.S.C. § 1538(a). The ESA clarifies that it is "unlawful for any person . . . to attempt to commit, solicit another to commit, or cause to be committed" a taking of an endangered or threatened species. 16 U.S.C. § 1538(g). Under the ESA, "take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). In relevant part, "person" is defined to mean "any officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality, or political subdivision of a State." 16 U.S.C. § 1532(13).

The citizen-suit provision of the ESA allows any person to commence a civil suit on his own behalf "to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A).

Plaintiffs allege that the federal and state defendants are violating the ESA because they are causing takings to be committed by "allowing and authorizing" known takings by the recreational hook and line fishery. See Am. Compl. ¶¶ 51–52; Pls.' Resp. Fed. Defs.' Mot. Dismiss [D.E. 58] 1–5, 26–27; Pls.' Resp. State Defs.' Mot. Dismiss [D.E. 69] 1–7, 15–19. In making this argument, plaintiffs rely primarily on Strahan v. Coxe, 127 F.3d 155 (1st Cir. 1997). In Strahan, the United States Court of Appeals for the First Circuit held that an ESA violation can be based on third-party causation. See id. at 163–64 ("[A] governmental third party[,] pursuant to whose authority an actor

16

directly exacts a taking of an endangered species[,] may be deemed to have violated the provisions of the ESA.").

Plaintiffs have not plausibly alleged that the federal defendants have caused sea-turtle takings to be committed. First, beyond a conclusory allegation that all defendants "authorize, approve, and license recreational hook and line fishery," plaintiffs have not alleged that the federal defendants play any role in "authorizing or allowing" recreational hook and line fishing in North Carolina waters. Am. Compl. ¶ 4. For example, there are no factual allegations in the amended complaint supporting the claim that the federal defendants are involved in the permitting or licensing process for recreational fishermen in North Carolina or that recreational hook and line fishing "could not take place" without federal authorization. Strahan, 127 F.3d at 163.[10] Furthermore, to the extent plaintiffs' claim against the federal defendants is based on the federal defendants' failure to enact a specific regulatory scheme against the recreational hook and line fishery or on the federal

---

[10] In their response to the federal defendants' motion to dismiss, plaintiffs claim that "NOAA issues permits to recreational charter vessels and headboats for certain specified fish species" and cite 50 C.F.R. § 622.4(a)(1). Pls.' Resp. Fed. Defs.' Mot. Dismiss [D.E. 58] 26. Assuming without deciding the truth of this assertion, "statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011). On the pleadings, plaintiffs have presented nothing more than conclusory allegations that the federal defendants "allow or authorize" sea-turtle takings. Alternatively, recreational charter vessel licensing is too attenuated to the sea-turtle takings to be a sufficient basis for a claim. The mere fact that federal agencies and officers issue licenses to some vessels, whose passengers may engage in recreational hook and line fishing, which may result in a sea-turtle taking, does not show that the federal defendants are causing sea turtles to be taken or that the takings "could not take place" without the federal vessel license. Strahan, 127 F.3d at 163. Moreover, this case is not analogous to Defenders of Wildlife v. Adm'r, EPA, 882 F.2d 1294 (8th Cir. 1989), the only case cited by plaintiffs where an ESA violation was upheld against a federal defendant. In that case, the United States Court of Appeals for the Eighth Circuit held that the EPA had caused a taking by continuing to register a pesticide that negatively affected protected wildlife species. See Defenders of Wildlife, 882 F.2d at 1296–1301. Here, in contrast, plaintiffs fail to plausibly allege that any licensing by the federal defendants has a similar causal nexus to the sea-turtle takings as the pesticide registration in Defenders of Wildlife had to the takings in that case.

17

defendants' decision not to seek penalties against the recreational hook and line fishery for sea-turtle takings, those decisions are discretionary and are judicially unreviewable. See, e.g., 16 U.S.C. § 1540(a)(1) (the Secretary may impose civil penalties against any person who exacts a taking); Heckler v. Chaney, 470 U.S. 821, 832 (1985). The court declines to construe the federal defendants' discretionary decisions to not impose regulations or seek penalties against recreational fishermen as implicit authorization for recreational fisherman to take sea turtles. Thus, plaintiffs have failed to plausibly allege that the federal defendants are causing sea-turtle takings to be committed.

Unlike with the federal defendants, plaintiffs have plausibly alleged that the state defendants are actively involved in licensing, permitting, and regulating the recreational hook and line fishery. See, e.g., Am. Comp. ¶¶ 15, 17, 19. Plaintiffs also have cited numerous nonbinding cases where courts have held that "a governmental third party pursuant to whose authority an actor directly exacts a taking of an endangered species may be deemed to have violated the provisions of the ESA" because the ESA bans "those acts of a third party that bring about the acts exacting a taking." Strahan, 127 F.3d at 163; see Red Wolf Coal. v. N.C. Wildlife Res. Comm'n, No. 2:13-CV-60-BO, 2014 WL 1922234, at *5–8 (E.D.N.C. May 13, 2014) (unpublished) (holding that the state may "be liable for the unauthorized takes of red wolves where its actions [in licensing coyote hunting] have greatly increased the likelihood of the take" of red wolves); Animal Prot. Inst. v. Holsten, 541 F. Supp. 2d 1073, 1076–80 (D. Minn. 2008) (concluding that state officers may be liable for lynx takings that are incidental to the trapping activities because "[i]n order to legally engage in trapping in Minnesota . . . one must obtain a license and follow all governmental regulations governing trapping activities"); Seattle Audubon Soc'y v. Sutherland, No. 2:06-CV-1608-MJP, 2007 WL 1300964, at *8–12 (W.D. Wash. May 1, 2007) (unpublished) (holding that governmental officials can be liable when operators "are specifically authorized by the Department to undertake forest

18

practices that are likely to take spotted owls"). Given the court's disposition on the Rule 12(b)(1) motions, the court declines to address whether the state defendants' involvement in licensing an entire industry bears a sufficient causal connection to the sea-turtle takings to state a claim for relief against the state defendants.[11]

IV.

In sum, the court GRANTS the federal defendants' motion to dismiss for lack of jurisdiction [D.E. 42] and the state defendants' motion to dismiss for lack of jurisdiction [D.E. 67], and DISMISSES as moot defendant Myers's motions to dismiss [D.E. 31, 39].

SO ORDERED. This 22 day of July 2015.

JAMES C. DEVER III
Chief United States District Judge

---

[11] State defendant Myers raised a Rule 12(b)(6) motion. See [D.E. 67] 1 n.2. State defendants van der Vaart and Daniel filed an answer before moving to dismiss under Rule 12(b)(6). See [D.E. 41]. Thus, defendant van der Vaart and defendant Daniel's motion is considered a motion for judgment on the pleadings pursuant to Rule 12(c). See [D.E. 67] 1 n.2. "However, the distinction is one without a difference, [because the court would] . . . apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

19